IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DR. KELLY A. BLACK, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:15-CV-3761-D |
| VS. § | |
| § | |
| DALLAS COUNTY COMMUNITY § | |
| COLLEGE DISTRICT, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, defendant Dallas County Community College District ("DCCCD") moves under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss plaintiff's claims of discrimination and retaliation under the Texas Commission on Human Rights Act ("TCHRA"),[1] Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015), and under Texas common law for breach of contract. For the reasons that follow, the court grants in part DCCCD's Rule 12(b)(1) motion to dismiss plaintiff's TCHRA claim, grants DCCCD's Rule 12(b)(6) motion to dismiss plaintiff's breach of contract claim, and grants plaintiff leave to replead.

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division.'" *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet.) (not designated for publication)). As in *King*, the court for clarity will refer to this claim as brought under the TCHRA.

I

To decide the instant motion, the court need not recount the background facts at length.

Plaintiff Kelly A. Black, DVM ("Dr. Black"), a licensed veterinarian, has been employed as a full-time faculty member of the Veterinary Technology Program ("Vet Tech Program") at DCCCD since 2007.[2] In 2013 Dr. Black, who at the time was serving as the Interim Director of the Vet Tech Program, was offered the position of Director. During salary negotiations for the position, the President of DCCCD's Cedar Valley College ("CVC")[3] asked Dr. Black to recruit for Vet Tech Program faculty at Tuskegee University, which is located outside of Texas. Dr. Black told CVC's Vice President for Instruction that he believed the purpose of this directive was to recruit African-American candidates, and that this purpose was discriminatory. Shortly thereafter, DCCCD ceased negotiations with Dr. Black regarding the Director position, blocked Dr. Black's efforts to make hires in his department, and ignored an outside consultant's recommendation to offer Dr. Black the Director position at a higher salary. DCCCD eventually reopened the position for new

---

[2]In deciding DCCCD's Rule 12(b)(6) motion, the court construes Dr. Black's petition in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Dr. Black's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[3]CVC is one of DCCCD's seven campuses.

applicants and, on July 23, 2014, hired Monica Fann, DVM ("Dr. Fann"), an allegedly less-qualified female candidate who was not licensed in the state of Texas. Dr. Black contends that he was ultimately denied consideration for the promotion to Director of the Vet Tech Program based on his race and gender, and on his allegation that he had been asked to pursue a racially discriminatory hiring practice.

On August 15, 2014 Dr. Black allegedly filed with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") an EEOC Intake Questionnaire ("Intake Questionnaire") in which he stated, among other things, that he had been subjected to discrimination due to his race, and that DCCCD and CVC had retaliated against him. On May 15, 2015 Dr. Black filed a charge of discrimination ("Charge of Discrimination") with the EEOC, alleging race, color, and sex discrimination, and retaliation. The EEOC issued Dr. Black a notice of right to sue.

On October 16, 2015 Dr. Black filed the instant lawsuit in state court against DCCCD, alleging claims for breach of contract under Texas law and for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the TCHRA. DCCCD removed the case to this court and now seeks a partial dismissal, contending that Dr. Black's TCHRA claims are time-barred and subject to dismissal under Rule 12(b)(1), and that his breach of contract claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523). If, however, defendant supports its motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual," and the burden shifts to Dr. Black to prove subject matter jurisdiction by a preponderance of the evidence. *Id*.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff['s] . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted).  To survive DCCCD's motion to dismiss under Rule 12(b)(6), Dr. Black must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

III

The court begins by considering Dr. Black's claims under the TCHRA.

A

Before suing an employer under the TCHRA, an aggrieved employee must first exhaust his administrative remedies by filing a complaint with the TWC "not later than the 180th day after the date the alleged unlawful employment practice occurred."  Tex. Lab. Code Ann. § 21.202(a); *see also Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486

(Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010). This 180-day time limit is "mandatory and jurisdictional." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Schroeder*, 813 S.W.2d at 487-88. In other words, a plaintiff's failure to file a complaint within the 180-day period is a failure to exhaust administrative remedies that deprives the court of subject matter jurisdiction. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012) ("In sum, we hold that section 21.202's administrative filing requirement is a mandatory statutory requirement that must be complied with before filing suit, and, as such, is a statutory prerequisite under section 311.034. Because Chatha failed to timely file her complaint with the TWC in accordance with the requirements of section 21.202, her suit against the University is jurisdictionally barred."). Because § 21.202(a) is mandatory and jurisdictional, the burden of establishing compliance with the statute is on Dr. Black as the plaintiff. *See, e.g., Sanchez v. Kennedy*, 202 S.W.3d 857, 859 (Tex. App. 2006, no pet.) ("The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction." (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993))).

B

DCCCD maintains that the court lacks subject matter jurisdiction over Dr. Black's TCHRA claim because he failed to exhaust his administrative remedies with the TWC before filing suit. DCCCD contends that because Dr. Black did not file his EEOC charge until May

15, 2015, and the claims set forth in his petition[4] are based entirely on conduct that occurred well before November 2014, his claims are subject to dismissal under the TCHRA. DCCCD also argues in a footnote that, although Dr. Black alleges that he filed a "discrimination complaint" with the EEOC and TWC in August 2014, because he has neither alleged that the complaint was a *sworn written complaint*, as required by Tex. Lab. Code Ann. § 21.201(b), nor attached a copy of the complaint to his petition, the "[DCCCD] does not believe Plaintiff filed a sworn Charge prior to May 15, 2015." D. Br. 4 n.1.

In response, Dr. Black attaches a copy of his Intake Questionnaire, which he alleges he submitted to the EEOC and TWC in August 2014. He argues that although the Intake Questionnaire is not a sworn written statement, as Tex. Lab. Code Ann. § 21.201(b) requires, the lack of verification is merely a technical defect that he cured, as permitted under Tex. Lab. Code Ann. § 21.201(e),[5] by filing his Charge of Discrimination. Dr. Black contends that, under Texas law, the allegations in the Charge of Discrimination relate back to the date he filed the Intake Questionnaire because the Charge of Discrimination merely reasserts his previous claims of discrimination based on race and retaliation, and adds claims of discrimination based on color and sex and the retaliatory events that had occurred since his

---

[4] Because Dr. Black filed this lawsuit in state court, the pleading initiating the suit is referred to as a "petition."

[5] Tex. Lab. Code Ann. § 21.201(e) provides: "A complaint may be amended to cure technical defects or omissions, *including a failure to verify the complaint* or to clarify and amplify an allegation made in the complaint." Tex. Lab. Code Ann. § 21.201(e) (emphasis added).

first filing. In other words, Dr. Black posits that he timely submitted his Intake Questionnaire "and later simply added claims without changing the factual basis." P. Br. 7.

DCCCD replies that Dr. Black's Intake Questionnaire does not meet the statutory requirements for a charge of discrimination because it is unsworn. It contends that although under Texas law a plaintiff can cure technical defects in a complaint by filing a verified complaint outside the 180-day time limit, Dr. Black's Intake Questionnaire shows only that it was *signed* before the deadline, not that the TWC *received* it by the deadline.[6] DCCCD also posits that, even if the court treats the Intake Questionnaire as a timely charge, events that occurred before February 20, 2014[7] are not timely, and, in any event, because the Intake Questionnaire does not mention any claim of color or gender discrimination, these claims, raised for the first time in Dr. Black's Charge of Discrimination, cannot relate back to the Intake Questionnaire.

C

Dr. Black does not contend that his Charge of Discrimination was filed in compliance with the TCHRA's 180-day deadline. Instead, he posits that, because he filed his Intake Questionnaire before the deadline expired, and since the technical defects in the Intake Questionnaire—i.e., the lack of verification—were cured when he filed his sworn Charge of

---

[6]DCCCD contends that when it recently received the TWC's certified records regarding Dr. Black, the records did not include any complaint from 2014, "sworn or otherwise." D. Br. 4 n.1.

[7]Because August 15, 2014 minus 180 days is February 16, 2014, it is unclear how DCCCD arrived at this date.

Discrimination, he has satisfied the exhaustion requirement of Tex. Lab. Code Ann. § 21.202(a). Accordingly, to decide DCCCD's motion to dismiss, the court must determine whether Dr. Black's Intake Questionnaire should be treated as a timely complaint for purposes of the TCHRA's exhaustion requirement.

It is undisputed that the Intake Questionnaire was not "made under oath," as Tex. Lab. Code Ann. § 21.201(b) requires. Dr. Black's Charge of Discrimination, however, was. In *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 373 (Tex. 1993) (per curiam), the Supreme Court of Texas held that "a verified complaint filed outside of the 180-day time limit relates back to, and satisfies any deficiencies in an unverified questionnaire filed within the 180-day limit, therefore satisfying the 180-day jurisdictional requirement of section [21.202(a)]." *Id.* at 373 (citing *Brammer v. Martinaire, Inc.*, 838 S.W.2d 844 (Tex. App. 1992, no writ)).

DCCCD argues that *Hennigan* does not apply because Dr. Black has failed to establish that the Intake Questionnaire was *actually received* by the TWC within the 180-day time limit. It relies on *Texas Department of Public Safety v. Alexander*, 300 S.W.3d 62, 76 (Tex. App. 2009, pet. denied), in which a Texas Court of Appeals held that the trial court erred in denying the defendant's plea to the jurisdiction with respect to a plaintiff's TCHRA claim where the plaintiff provided evidence that she had *signed* the Intake Questionnaire before the 180-day deadline, but failed to present evidence that that document had been *received* by that deadline. *Id.* at 76.[8]

---

[8]The court explained:

When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Hunter*, 2013 WL 607151, at *2. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523). Because DCCCD does not support its Rule 12(b)(1) motion with any evidence, its challenge is facial.[9] Accordingly, the court will decide

---

> if Garza could show that she filed her questionnaire before the 180-day deadline, she could receive the benefit of *Hennigan*, and her late-filed charge would relate back to the date she filed the questionnaire. However, Garza's questionnaire shows only that it bears a date indicating that it was signed before the deadline, not that Garza filed it by the deadline. There is no file stamp on the document, nor is there a notation of any kind underneath a typed statement on the first page of the document reading "Date Received by TCHR." Thus, there must be something else in the record to create a logical bridge between the completed intake questionnaire and the timely filing of that questionnaire. . . . Because there is no evidence in the record to establish that Garza timely filed an intake questionnaire or any other document containing the components of a proper complaint, we conclude that the trial court erred in denying TDPS's plea to the jurisdiction with respect to Garza's TCHRA claims.

*Alexander*, 300 S.W.3d at 76 (citation and footnote omitted).

[9]DCCCD asserts that when it recently received TWC's certified records regarding Dr. Black, the records did not include "any complaint from 2014, sworn or otherwise." D. Br. 4 n.1. But it does not offer evidence that Dr. Black never filed the Intake Questionnaire with the TWC or that the TWC did not receive a copy of Dr. Black's Intake Questionnaire on August 15, 2014, as pleaded.

DCCCD's motion only by looking to the sufficiency of the pleadings and accepting, as true, Dr. Black's allegations as they relate to the court's subject matter jurisdiction.

Dr. Black alleges in his petition that, "[o]n or about August 15, 2014, [he] *filed* a discrimination complaint with the [EEOC], dual-filed with the [TWC]." Pet. ¶ 17 (emphasis added). Because the court must accept Dr. Black's allegations as true, the court concludes that Dr. Black has met his burden of establishing that he filed, and consequently that the TWC received, the Intake Questionnaire on August 15, 2014.[10] Accordingly, under *Hennigan*, Dr. Black's Charge of Discrimination relates back to the date the Intake Questionnaire was filed. *Hennigan*, 858 S.W.2d at 373. Thus, at least to the extent Dr. Black's TCHRA claim relates to acts of race discrimination or retaliation that occurred on or after February 16, 2014, this claim is timely, and Dr. Black has properly exhausted his administrative remedies.[11]

---

[10]Although the petition uses the term "discrimination complaint," which is perhaps closer in meaning to the term "Charge of Discrimination" than to the term "Intake Questionnaire," the court accepts it as an allegation that Dr. Black filed the Intake Questionnaire on August 15, 2014. First, the petition uses the term "discrimination complaint" preceded by the indefinite article "a." Conceptually, an "Intake Questionnaire" can be thought of as a type of "a discrimination complaint," even if it is not "the Charge of Discrimination." Second, the only document that Dr. Black allegedly filed on August 15, 2014 is the Intake Questionnaire. There is no claim that he filed the Charge of Discrimination until May 15, 2015.

[11]In his Charge of Discrimination, Dr. Black checked the "continuing action" box, and indicated that the earliest date that discrimination took place was May 2, 2013. The court holds that Dr. Black has sufficiently alleged that his Intake Questionnaire was filed on August 15, 2014. Although this filing is timely with respect to Dr. Black's allegation that DCCCD discriminated based on race and retaliated against him when it chose Dr. Fann to fill the Director position in July 2014, the Intake Questionnaire is not necessarily timely with

D

The court considers next whether Dr. Black has properly exhausted his claims for gender and color discrimination. DCCCD argues that Dr. Black failed to exhaust his administrative remedies with respect to these claims because the Charge of Discrimination (in which Dr. Black first raises these claims) was filed outside the 180-day deadline, and the Intake Questionnaire does not mention any claim of color or gender discrimination. The court agrees.[12]

Under the "relation back" doctrine, an "amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject

---

respect to other acts of discrimination that occurred before February 16, 2014 (i.e., August 15, 2014 minus 180 days). Under Texas law, there is an exception to the 180-day filing deadline "for unlawful discrimination that 'manifests itself over time, rather than [as] a series of discrete acts.'" *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 808 (Tex. App. 2009, no pet.) (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41-42 (Tex. App. 1998, pet. denied)). "When such 'continuing violation' discrimination occurs, the 180-day filing clock does not begin to run until one of the involved discriminatory events 'should, in fairness and logic, have alerted the average layperson to act to protect his or her rights.'" *Id.* (quoting *Wal-Mart Stores*, 979 S.W.2d at 42). To the extent Dr. Black intends to base his discrimination or retaliation claims on events that occurred before February 16, 2014, these claims will be time-barred unless Dr. Black is able to establish that, in fairness and logic, the event in question should not have alerted the average layperson to act to protect his rights. The court will not decide today whether Dr. Black has met this burden. The question whether there was a "continuing action" has not been fully briefed by the parties (DCCCD did not raise this precise issue until its reply brief). And Dr. Black has met his burden of establishing subject matter jurisdiction with respect to his race discrimination and retaliation claims to the extent these claims are based on the July 2014 decision to hire Dr. Fann for the Director position.

[12]Because Texas and federal law are the same in all material respects, the court will cite both federal and Texas authorities in its analysis.

-12-

matter of the original complaint relates back to the date the complaint was first received by the commission." Tex. Lab. Code Ann. § 21.201(f); *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 809 (Tex. App. 2009, no pet.). As a general rule, however, "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (citing cases); *Poindexter*, 306 S.W.3d at 809. The Fifth Circuit has identified "one very narrow exception to this general rule," noting that "an amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same." *Manning*, 332 F.3d at 879. The court clarified, however, that "[t]he issue is not whether the employee *adds* any facts when he amends his charge of discrimination. Instead, the question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Id.* (citing cases); *see also City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581-82 (Tex. App. 2014, no pet.) ("amendments that raise a new legal theory of discrimination do not relate back to the initial charge of discrimination, unless the facts supporting both the amendment and the initial charge are essentially the same. . . . The charge must contain an adequate factual basis to put the employer on notice of the existence and nature of the claims against it.").

On the Intake Questionnaire, gender (actually, "sex") and color discrimination are different grounds for discrimination than is race discrimination, and there are no allegations in the Intake Questionnaire that would put DCCCD on notice that Dr. Black intended to

pursue a charge of gender or color discrimination. He did not check the "sex" or "color" box on the Intake Questionnaire, and in his explanation of claimed discrimination, he does not advert to any facts suggesting discrimination based on his gender or color. Accordingly, the charges of gender and color discrimination included in Dr. Black's Charge of Discrimination do not relate back to his Intake Questionnaire, which by its own terms alleged only race discrimination. *See, e.g., Poindexter*, 306 S.W.3d at 809 (holding that amended charge that added complaint of retaliation omitted from initial charge that alleged only race-based discrimination did not "relate back" to original charge because retaliation is different legal theory). Consequently, Dr. Black has failed to exhaust his administrative remedies with respect to his gender and color discrimination theories, and they are therefore barred for lack of jurisdiction. The court grants DCCCD's motion to dismiss Dr. Black's TCHRA claim to the extent the claim is based on gender or color discrimination. The court lacks jurisdiction over these claims.

IV

The court now turns to DCCCD's motion to dismiss Dr. Black's breach of contract claim under Rule 12(b)(6).

A

Dr. Black alleges that DCCCD breached its contract with him by violating its policies and procedures regarding discrimination, retaliation, and internal promotions. DCCCD moves to dismiss this claim, arguing, *inter alia*, that Dr. Black has failed to plausibly allege that DCCCD's equal employment opportunity policies created a contract for conduct during

-14-

Dr. Black's employment. In other words, it maintains that Dr. Black's "breach of contract claim fails, as a matter of law, because Plaintiff does not allege any facts that plausibly allow a finding that Defendant expressly, clearly, and specifically agreed to limit the District's rights in making promotion and other *non-termination* employment related decisions." D. Br. 7 (underlining omitted).

Dr. Black responds by attaching copies of his May 2012 and May 2015 employment contracts and arguing that, on their face, the contracts "require Plaintiff to adhere to and implement 'the District's policies' and state that Plaintiff 'will be entitled to benefits as provided by the policies of the Dallas Community College District.'" P. Br. 7. He argues that "[t]he benefits of such policies include being free from discrimination and retaliation," and that his allegation that DCCCD's policies were part of his employment contract and that DCCCD breached such contract are sufficient to state a claim for breach of contract. *Id.*

B

Under Texas law, employee handbooks or policy manuals merely constitute guidelines for the employment relationship and do not create an employment contract unless they contain language that specifically expresses an intention to be bound by the terms of the policy. *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585 (Tex. App. 2005, no pet.); *Werden v. Nueces Cnty. Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex. App. 2000, no pet.). In his petition, Dr. Black alleges:

> By adopting its policies and procedures and making the policies and procedures known to its employees, DCCCD effectively promised the employees to follow the policies and procedures and provide the employee with the benefits of same, in exchange for the employees' performance of their jobs. By and through Plaintiff's employment with DCCCD and the performance of his job, the DCCCD policies and procedure[s] effectively became part of an employment contract between the parties, and the policies and procedures of DCCCD created and vested Plaintiff with contractual rights and property interests.

Pet. ¶ 29. Dr. Black does not attach a copy of the relevant policies and procedures, and he has not plausibly alleged that DCCCD expressed an intention to be bound by the terms included in its policies and procedures on discrimination, retaliation, or internal promotions. He in fact alleges only that DCCCD "*effectively* promised" to follow its policies and that these policies "*effectively* became part of an employment contract." *Id.* (emphasis added). He does not plead that DCCCD *expressly stated* an intent to be bound by its policies. *Brown*, 173 S.W.3d at 585; *Werden*, 28 S.W.3d at 651. Accordingly, because Dr. Black has failed to plausibly allege any policy or procedure that constituted a binding contract that DCCCD breached through its allegedly discriminatory and retaliatory actions, the court grants DCCCD's motion to dismiss Dr. Black's breach of contract claim.

In his response, Dr. Black requests permission to "amend his pleading [to] describe more specifically his cause of action for breach of contract." P. Br. 8. Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead (unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal), the

court grants Dr. Black's request that he be allowed to amend his petition. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)).  The court grants Dr. Black leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

\* \* \*

For the foregoing reasons, the court grants in part DCCCD's Rule 12(b)(1) motion, grants DCCCD's Rule 12(b)(6) motion to dismiss Dr. Black's breach of contract claim, and grants Dr. Black leave to file an amended complaint.

**SO ORDERED**.

March 10, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE